**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| **MELISSA BRACKEEN, as** | § | |
| **Next Friend of R.B., a minor child,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 5:26-cv-00030** |
| | § | |
| **CITY OF TEXARKANA, TEXAS,** | § | |
| **ZACHARY GILLEY, CODY HARRIS,** | § | |
| **D.E. EVANS, JEREMY COURTNEY,** | § | |
| **MARC NEAL,** | § | |
| **and DOE SUPERVISORS 1-10,** | § | |
| | § | |
| **Defendants.** | § | |

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND**
**OTHER TORTIOUS CONDUCT**

COMES NOW, Plaintiff Melissa Brackeen, as Next Friend of R.B., by and through her counsel, Fadduol, Cluff, Hardy & Conaway, P.C. (Meghan L. Mitchell and Margret Brown) and THE702FIRM (Michael C. Kane), and brings the following causes of action pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution:

**PARTIES**

**Plaintiff**

1.  Plaintiff Melissa Brackeen ("Plaintiff") is the mother of R.B., a minor child, and is bringing this lawsuit on behalf of R.B. Plaintiff is a resident of Bowie County, Texas.

2.  At all times material hereto, R.B. was a minor child, fifteen (15) years of age.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

**Defendants**

3.  Defendant City of Texarkana, Texas ("The City") is a Texas municipal governmental entity and political subdivision of the State of Texas and a "person" under 42 U.S.C § 1983. The City of Texarkana is responsible for the administration, policymaking, and supervision of the Texarkana Texas Police Department (TTPD). The City employed Defendant Zachary Taylor Gilley at all times material hereto, as well as the other officers sued herein. The City was responsible for adopting and implementing the policies, customs, and practices of its employees and agents, specifically regarding the TTPD Explorer Program. The City may be served through its City Manager, David Orr, 220 Texas Boulevard, Texarkana, TX 75501.

4.  Defendant Zachary Taylor Gilley (hereinafter "Defendant Gilley") was, at all times material hereto, employed by Defendant City of Texarkana as a police officer. Defendant Gilley acted in the course and scope of his employment and under color of law, using his authority as a Texarkana police officer to groom, engage in inappropriate contact, and sexually assault the minor child, R.B. He is sued in his individual and official capacities. Defendant Gilley may be served at 2013 County Road 4232, De Kalb, TX 75559 or wherever he may be found.

5.  Defendant Cody Harris (hereinafter "Defendant Harris") was, at all times material hereto, employed by Defendant City of Texarkana as a police officer. Upon information and belief, Defendant Harris was, at all times material hereto, the sergeant in charge over the Explorer Program. Defendant Harris acted in the course and scope of his employment, under color of law, and with policymaking and supervisory authority over the Explorer Program as well as Defendant Gilley. He is sued in his individual and official capacities. Defendant Harris may be served at the Texarkana Police Department, 100 N. State Line Ave. #16, Texarkana, TX 75501 or wherever he may be found.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

6. Defendant D.E. Evans (hereinafter "Defendant Evans") was, at all times material hereto, employed by Defendant City of Texarkana as a police officer. Upon information and belief, Defendant Evans had a supervisory role within the Explorer Program and over Defendant Gilley. Defendant Evans acted in the course and scope of his employment and under color of law when carrying out his supervisory duties within the Explorer Program. He is sued in his individual and official capacities. Defendant Evans may be served at the Texarkana Police Department, 100 N. State Line Ave. #16, Texarkana, TX 75501 or wherever he may be found.

7. Defendant Jeremy Courtney (hereinafter "Defendant Courtney") was, at all times material hereto, employed by Defendant City of Texarkana as a police officer. Upon information and belief, Defendant Courtney was the lieutenant within the Explorer Program with a policymaking and supervisory role over the Explorer Program and Defendant Gilley. Defendant Courtney acted in the course and scope of his employment and under color of law when carrying out his supervisory duties within the Explorer Program. He is sued in his individual and official capacities. Defendant Courtney may be served at the Texarkana Police Department, 100 N. State Line Ave. #16, Texarkana, TX 75501 or wherever he may be found.

8. Defendant Marc Neal (hereinafter "Defendant Neal") was, at all times material hereto, employed by Defendant City of Texarkana as a police officer. Upon information and belief, Defendant Neal had a supervisory role within the Explorer Program and over Defendant Gilley. Defendant Neal acted in the course and scope of his employment and under color of law when carrying out his supervisory duties within the Explorer Program. He is sued in his individual and official capacities. Defendant Neal may be served at the Texarkana Police Department, 100 N. State Line Ave. #16, Texarkana, TX 75501 or wherever he may be found.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

9. Defendants Doe Supervisors 1-10 (hereinafter "Doe Defendants") were, at all times material hereto, employed by Defendant City as supervisors within the Texarkana Texas Police Department with authority over the Explorer Program and Defendant Gilley. The true names of Doe Defendants are currently unknown to Plaintiff. Plaintiff will seek leave to amend her Complaint to allege their true names once it is ascertained through discovery. Doe Defendants acted in the course and scope of their employment and under color of law. Doe Defendants are sued in their individual and official capacities.

## JURISDICTION AND VENUE

10. Original jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 because the facts and circumstances underlying the claims arise under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

11. Venue is proper in the Eastern District of Texas, Texarkana Division, pursuant to 28 U.S.C. § 1391(b)(2) because Defendants reside in this district and because the events and omissions giving rise to Plaintiff's claims occurred in this district, specifically within Bowie County.

## FACTUAL ALLEGATIONS

**Background of the Texarkana, Texas Police Department Explorer Program**

12. At all times relevant to this Complaint, R.B. was a 15-year-old participant in the Texarkana, Texas Police Department (TTPD) Explorer Program.

13. The program was designed to mentor youth and young adults who were interested in having a career in law enforcement.

14. The program allowed the participants to shadow officers in the field by riding along with them in their patrol cars.

15. Upon information and belief, Defendant Harris was a sergeant with the Texarkana Police Department during all relevant times and was the head of the Explorer Program.

16. Upon information and belief, Defendant Harris was responsible for supervising and training officers within the program, including Defendant Gilley.

17. Likewise, he had a responsibility to supervise the participants of the Explorer Program, including R.B.

18. Furthermore, upon information and belief, Defendant Harris was responsible for the creation and implementation of the official policies, customs, and practices of the Explorer Program, including those pertaining to the "ride-alongs" that gave Defendant Gilley access to groom, engage in inappropriate contact, and sexually assault R.B., the minor child.

19. Likewise, upon information and belief, Defendant Courtney was also responsible for the creation and implementation of the official policies, customs, and practices of the Explorer Program. Likewise, Defendant Courtney had supervisory responsibility over the officers within the program, including Defendant Gilley and the participants of the program, such as R.B.

20. Upon information and belief, Defendants Evans and Neal shared responsibility for supervising officers within the program, as well as the participants within the program, including R.B.

21. Upon information and belief, Defendants Evans and Neal were also responsible for the implementation of the policies, customs, and practices of the Explorer Program, including those pertaining to the "ride-alongs" that gave Defendant Gilley access to groom, engage in inappropriate contact, and sexually assault R.B., the minor child.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

22. Specifically, upon information and belief, Defendants Evans and Neal were responsible for assigning participants to individual officers for the "ride-alongs" and were therefore responsible for assigning R.B. to Defendant Gilley.

23. Defendants Harris, Evans, Courtney, Neal, and Doe will be referred to throughout this Complaint as the Supervisory Defendants.

24. Defendant Gilley was employed as a law enforcement officer by The City and served as an advisor, mentor, or supervisor within the Explorer Program.

**Defendant Gilley's Continuous Sexual Abuse of Minor R.B.**

25. Defendant Gilley utilized his position of authority, his badge, and his uniform to gain access to R.B. and to isolate her from her parents and guardians.

26. Beginning on or about January 1, 2024, and continuing through on or about November 1, 2024, Defendant Gilley subjected R.B. to a pattern of escalating grooming and sexual abuse while she was in his custody for TTPD Explorer "ride-alongs."

27. Defendant Gilley preferred R.B. to accompany him on "ride-alongs," instead of the other participants.

28. Defendant Gilley did not hide his preference for R.B. to his employer, his supervisors, or other officers with TTPD, as he exhibited a poor attitude when another participant was assigned to him.

29. This led Defendant Gilley's supervisors, Defendants Evans and Neal, to discontinue assigning other participants to him.

30. Rather, Defendants Evans and Neal proceeded to only assign R.B. to Defendant Gilley.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

31. The City and the Supervisory Defendants allowed Defendant Gilley to act upon his personal preference for R.B., assigning him R.B. exclusively, thereby allowing Defendant Gilley to repeatedly isolate R.B. from other officers and program participants.

32. Defendant Gilley's repeated insistence on exclusive access to R.B., coupled with his adverse reaction when separated from R.B., constituted a clear and obvious red flag of potential grooming behavior and sexual misconduct.

33. It should have been plainly obvious to Defendant City and the Supervisory Defendants that allowing Defendant Gilley to isolate R.B. in this manner posed a substantial and foreseeable risk of sexual abuse.

34. Despite this obvious risk, Supervisory Defendants and the City failed to intervene, failed to investigate, failed to alter assignment practices, and failed to enforce basic safeguards to protect R.B.

35. The Supervisory Defendants took no meaningful steps to limit Defendant Gilley's access to R.B. or to implement any protective oversight whatsoever, thereby affirmatively allowing the dangerous practice to continue.

36. This failure constitutes deliberate indifference to the constitutional rights and bodily integrity of R.B.

37. Defendant Gilley was given unfettered, isolated, and prolonged access to R.B., as the "ride-alongs" lasted between the hours of 6 p.m. and 6 a.m.

38. Defendant Gilley's grooming behavior began in the January/February 2024 timeframe, when Defendant Gilley told the 15-year-old R.B. that he had a "crush" on her.

39. Leveraging his authority as a police officer, Defendant Gilley coerced R.B. into a "pinky promise" not to tell anyone about his comments, creating a secret dynamic that further isolated R.B.

40. This behavior escalated while Defendant Gilley was on duty, sitting in his patrol vehicle running laser radar on Interstate 30. During these times, he would hold R.B.'s hand and kiss her.

41. The abuse quickly escalated to physical sexual contact inside the patrol vehicle. Defendant Gilley reached into R.B.'s shirt and touched her bare breast inside her bra.

42. Defendant Gilley subsequently escalated the abuse to digital penetration. While in the patrol vehicle, he reached into R.B.'s pants and touched her vagina. Due to Defendant Gilley's sharp, unkempt fingernails, this penetration caused scratches and bleeding to R.B.'s genitalia.

43. On another occasion, Defendant Gilley exposed his penis while sitting in the driver's seat of the patrol vehicle. He spat into his hand and masturbated until he ejaculated. This incident terrified R.B., causing her to retreat to the rear of the patrol vehicle while the officer finished.

44. The abuse culminated in a specific incident where Defendant Gilley drove the patrol vehicle to a location "further downtown" than his usual radar post. During this incident, he gave R.B. a hickey on her neck, exposed his penis, grabbed R.B. by her hair, and forced her face onto his penis.

45. Defendant Gilley forced R.B. to perform oral sex on him. This act caused R.B. physical pain as the brackets of her orthodontic braces cut into the back of her mouth. Despite her attempts to stop due to the pain, Defendant Gilley grabbed her hair again and forced her to continue until he ejaculated into her mouth and on her face.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

46. Throughout this period, Defendant Gilley sent text messages to R.B., further attempting to groom her by building her trust, bonding with her, and testing boundaries.

47. In May of 2024, Defendant Gilley informed R.B. that he and R.B. needed to discontinue texting and instructed R.B. to delete their messages and his phone number from her phone because his supervisors were asking questions about his personal life and the circumstances surrounding his potential divorce. Further, Defendant Gilley indicated that some supervisors were questioning why he only rode with R.B.

48. Although R.B. and Defendant Gilley ceased messaging, Defendant Gilley was allowed to continue escorting only R.B. on "ride-alongs" and was therefore able to continue his sexual abuse of the minor child.

49. Although there were numerous opportunities for Defendant City and Supervisory Defendants to intervene to protect R.B. from Defendant Gilley's continuous sexual abuse, they failed to do so.

50. Even after suspicions were raised, Defendants consciously chose to ignore their suspicions rather than investigate them at all, including what would amount to the bare minimum of inquiring with R.B. about her time with Defendant Gilley.

51. A Grand Jury of Bowie County, Texas has formally indicted Defendant Gilley for Sexual Assault of a Child, a 2nd Degree Felony, specifically finding that he "did then and there intentionally or knowingly cause the penetration of the sexual organ of [R.B.]... by defendant's hands and/or fingers."

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

**Defendant City's Policies, Practices, and Customs that allowed Defendant Gilley to Sexually Assault R.B.**

52. Due to Defendant City's policy, practice, custom, and/or usage, Defendant Gilley had the ability and the opportunities to sexually assault a minor participant in the TTPD Explorer Program, R.B.

53. It was Defendant City's policy, practice, custom, and/or usage to fail to adequately supervise interactions between adult male officers and participants, including the minor female participants, in the Explorer Program. Specifically, Defendant City allowed Defendant Gilley to have a minor female alone in his patrol vehicle for extended periods, overnight, without adequate oversight, cameras, or a second officer present.

54. It was Defendant City's policy, practice, custom, and/or usage to not appropriately screen or perform background checks on officers selected to mentor youth in the Explorer Program.

55. Defendant City failed to completely or adequately screen Defendant Gilley before assigning him to the Explorer Program.

56. It was also Defendant City's policy, practice, custom, and/or usage to fail to train its officers on the strict boundaries required when supervising minors in department programs.

57. Likewise, it was Defendant City's policy, practice, custom and/or usage to ignore clear signs of boundary violations between Defendant Gilley and R.B.

58. Furthermore, it was Defendant City's policy, practice, custom and/or usage to permit officers within their Explorer Program, such as Defendant Gilley, to exercise unchecked discretion in selecting, isolating, and interacting with participants, including its minor female participants, without adequate supervision, safeguards, or oversight.

59. The City maintained a policy, practice, custom and/or usage of allowing officers, such as Defendant Gilley, to show preference toward particular participants, including minor females,

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

such as R.B., and to isolate such participants from other program members, volunteers, and supervising personnel.

60. The City knew or should have known that allowing officers to single out and isolate participants, especially minor female participants, created a substantial and obvious risk of sexual exploitation and assault.

61. The risk that a police officer who isolates females and demonstrates preferential fixation could engage in sexual misconduct is obvious and well-recognized in law enforcement practice.

62. Despite this known and obvious risk, the City failed to implement adequate policies governing one-on-one conduct, failed to monitor interactions between officers and participants, and failed to train officers and supervisors regarding appropriate professional boundaries and the prevention of sexual misconduct.

63. Furthermore, despite the clear red flags raised by Defendant Gilley's behavior, the City, through its policymakers and supervisory officials, acquiesced in and tacitly approved Defendant Gilley's conduct by failing to investigate, intervene, reassign, supervise more closely, impose corrective discipline, or do anything at all.

64. The City's failures to act in the face of known warning signs constitutes deliberate indifference to the constitutional rights of R.B. because it amounts to a conscious or reckless disregard for the constitutional rights of R.B.

65. The constitutional violations suffered by R.B. were not isolated incidents, but were caused by the City's policies, practices, customs, and/or usages.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

**R.B.'s Injuries**

66. Due to Defendant City's and the Supervisory Defendants' failures as described above, Defendant Gilley deprived R.B. of her constitutional right to bodily integrity and equal protection under the Fourteenth Amendment.

67. The continuous sexual abuse has resulted in R.B. experiencing pervasive feelings of distrust, anxiety, sadness, and anger.

68. Furthermore, R.B. originally entered the Explorer Program because she wanted to become a police officer. However, the abuse she suffered while participating in the program has resulted in her surrendering her dreams of becoming a police officer.

69. R.B.'s relationships have suffered, and she has a general fear and anxiety towards men as a result of her assault and experiences within the program.

70. R.B. has suffered damages, including pain and suffering, emotional distress, loss of enjoyment of life, medical expenses, future emotional distress and medical expenses, as a result of the sexual assaults committed by Defendant Gilley.

## COUNT I
### (Plaintiff's Claims Against Defendant Gilley Under 42 U.S.C. § 1983)

71. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

72. At all times material to this Complaint, R.B. had a clearly established right to bodily integrity under the Fourteenth Amendment to the U.S. Constitution (Substantive Due Process) as well as a right to equal protection under the Fourteenth Amendment.

73. Defendant Gilley deprived R.B. of these rights by physically and sexually abusing her between January 2024 and November 2024.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

74. At all times material hereto, Defendant Gilley was acting under color of state law. The abuse occurred inside a marked patrol vehicle, while he was on duty, in uniform, and acting as a supervisor for a City-sanctioned Explorer Program.

75. Defendant Gilley's conduct shocks the conscience. It was egregious, outrageous, and arbitrary in the constitutional sense.

76. Defendant Gilley's conduct was the direct and proximate cause of R.B.'s injuries.

77. Because Defendant Gilley's conduct was motivated by evil motive or intent or involved reckless or callous indifference to R.B.'s federally protected rights, Plaintiff seeks punitive damages against Defendant Gilley.

## COUNT II
### (Plaintiff's Claims Against Defendant City Under 42 U.S.C. § 1983 - Monell Liability)

78. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

79. As more thoroughly outlined above, the Supervisory Defendants, possessing decision-making authority regarding Defendant Gilley's daily duties, had actual or constructive knowledge of suspicious circumstances surrounding Defendant Gilley's conduct.

80. Defendant Gilley exhibited clearly suspicious, boundary violating, and grooming behaviors as it pertains to R.B., which were plainly obvious and either known or should have been known to his supervisors and policymakers within the Explorer Program.

81. By acknowledging the suspicious behavior evidenced by the inquiry into Defendant Gilley's "divorce" and the reasons why Defendant Gilley rode with only R.B. but failing to investigate further or separate Defendant Gilley from the Explorer Program participants, the authorized policymakers approved the continuing behavior. This failure to act effectively ratified Defendant Gilley's conduct and signaled to subordinates that boundary violations with minors would be tolerated or ignored.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

82. Defendant City is liable for the violation of R.B.'s constitutional rights because the violation was caused by the official policies, customs, or practices of the City regarding the TTPD Explorer Program.

83. Specifically, Defendant City maintained policies, customs, or practices of:

a. Failing to adequately screen officers for assignment to youth programs;

b. Failing to supervise "ride-alongs" to ensure participants are not left isolated and vulnerable with adult officers for 12-hour shifts;

c. Allowing officers to select or request particular participants for "ride-alongs;"

d. Allowing officers to transport participants without sufficient oversight;

e. Failing to train officers regarding sexual misconduct, maintaining professional boundaries with participants, and reporting obligations when boundary violations are suspected;

f. Allowing officers to communicate privately with minor participants without monitoring or documentation requirements;

g. Creating a dangerously permissive environment where officers could use official duties such as running radar on I-30 as a cover for predatory behavior; and

h. Failing to establish meaningful supervisory mechanisms to monitor one-on-one interactions between officers and participants.

84. Defendant City acted with deliberate indifference to the known or obvious consequences of its failure to screen, train, and supervise. It is plainly obvious that placing a 15-year-old girl in a patrol car alone with an armed police officer for overnight shifts without strict supervision presents a known risk of constitutional injury.

85. This is especially true given Defendant Gilley's overt preference for R.B. over other participants within the program.

86. These policies and failures were the "moving force" behind Defendant Gilley's assault on R.B.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

87. The City's practices were sufficiently persistent and widespread to constitute a custom or usage of the City.

## COUNT III
### (Plaintiff's Claims Against Supervisory Defendants - Harris, Evans, Courtney, Neal, and Doe Under 42 U.S.C. § 1983)

88. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

89. The Supervisory Defendants were supervisory officials with the TTPD and had a duty to supervise Defendant Gilley, as well as the participants within the TTPD Explorer Program.

90. The Supervisory Defendants had actual or constructive notice of a pattern of conduct by Defendant Gilley that posed a pervasive and unreasonable risk of constitutional injury to R.B.

91. The Supervisory Defendants either knew or should have known that Defendant Gilley posed a significant risk of harm to R.B. because Defendant Gilley displayed preferential treatment toward R.B.

92. In showing such preferential treatment, Defendant Gilley manifested hostility when he was assigned to anyone else other than R.B., behavior that was observed by fellow officers and the Supervisory Defendants.

93. Rather than questioning this behavior, the Supervisory Defendants acquiesced to Defendant Gilley's demands.

94. Even later on when certain supervisors began to question Defendant Gilley's preference toward R.B. and the circumstances surrounding his potential divorce, the Supervisory Defendants consciously disregarded their concerns and continued to allow Defendant Gilley exclusive and isolated access to R.B.

95. Despite these obvious warning signs which the Supervisory Defendants had actual knowledge of, the Supervisory Defendants acted with deliberate indifference by failing to take corrective

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

action, failing to investigate the relationship, and failing to limit Defendant Gilley's access to R.B.

96. There is a causal link between the Supervisory Defendants failures to conduct meaningful investigation, supervision adjustment, reassignment, or any corrective action whatsoever and the continued violation of R.B.'s rights.

97. As it pertains to Plaintiff's claims against the Supervisory Defendants in their individual capacities, Plaintiff seeks an award of punitive damages.

## **PRAYER FOR RELIEF**

98. Plaintiff incorporates all of the preceding paragraphs as if fully stated herein.

99. As a direct and proximate result of the wrongful and unlawful acts and omissions of all Defendants, as described above, R.B. was injured and has suffered and continues to suffer damages, including, but not limited to: severe emotional distress, anguish, suffering, humiliation, psychological injuries, indignities, loss of enjoyment of life, deprivation of constitutional rights, invasion of bodily integrity, and other incidental, consequential, and special damages.

100. As a result of the above-described damages and injuries, R.B. is entitled to recover an award of full compensatory damages against all Defendants in amounts to be determined at the trial of this cause .

101. Plaintiff requests damages in an amount sufficient to compensate R.B. for all injuries and harm she suffered, as well as punitive damages as provided by law, along with costs of this action, pre- and post- judgment interest as provided by law, reasonable attorneys' fees  as provided by law, and such other and further relief as proves just.

102. Plaintiff requests a trial by jury on all issues so triable.

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*

Respectfully submitted,

FADDUOL, CLUFF, HARDY & CONAWAY, P.C.

1115 Broadway
Lubbock, Texas 79401
Telephone: (806) 763-9377
Facsimile: (806) 763-9378

*/s/ Meghan Mitchell*
Meghan Mitchell
mmitchell@fchclaw.com
Texas Bar No. 24102215
Margret Brown
Texas Bar No. 24130671

and


**THE702FIRM**

8335 W. Flamingo Road
Las Vegas, Nevada 89147
Telephone: (702) 776-3333
Facsimile: (702) 505-9787
MICHAEL C. KANE, ESQ.
service@the702firm.com
mike@the702firm.com
*Pending Pro Hac Vice*

*ATTORNEYS FOR PLAINTIFF*

*Plaintiff Brackeen's Original Complaint for Civil Rights Violations and Other Tortious Conduct*